**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:25-CV-01109 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| $110,000 IN US CURRENCY, | |
| Defendant. | |

**MEMORANDUM OPINION**

**MARCH 17, 2026**

## I.    BACKGROUND

In June 2025, the United States of America ("United States") filed a complaint for forfeiture in rem related to approximately $110,000 that it had previously seized from Joseph Louis Ortiz (the "Property").[1] In November 2025, upon motion from the United States, a warrant of arrest in rem was issued by this Court.[2] Later that month the United States submitted proof that the complaint had been served on Ortiz by certified mail, and that a notice of forfeiture had been published on an official Government website for thirty days.[3]

To date, no answer has been filed to the complaint, and no claims related to the Property have been submitted. In December 2025, the United States moved for an entry

---

[1]    Doc. 1.
[2]    Doc. 6.
[3]    Docs. 7, 8.

of default,[4] and default was subsequently entered by the Clerk of Court.[5] In January 2026, the United States filed this motion for default judgment.[6] No response has been filed, and the motion is now ripe for disposition. For the following reasons, the motion will be granted.

## II.   DISCUSSION

### A.   Whether Default Judgment is Warranted

Federal Rule of Civil Procedure 55 allows a district court to enter default judgment upon application by a party.[7] "Generally, the entry of a default judgment is disfavored, and a court is required to exercise sound judicial discretion in deciding whether to enter default judgment."[8] "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."[9]

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[10] "But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate

---

[4]   Doc. 10.
[5]   Doc. 11.
[6]   Docs. 12, 13.
[7]   Fed. R. Civ. P. 55(b)(2).
[8]   *Kibbie v. BP/Citibank*, No. 3:08-CV-1804, 2010 WL 2573845, at *2 (M.D. Pa. June 23, 2010).
[9]   10A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2685 (Apr. 2020 Update).
[10]   *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)."[11]

A consideration of those factors favors a grant of default judgment. First, the United States would be prejudiced by its "current inability to proceed with [its] action due to [the] failure to defend."[12] This prejudice is amplified by "the fact that [the United States] has no other remedy against the Defendant currency."[13] Similarly, the second factor weighs in favor of default judgment. No one has "responded to the allegations and," accordingly, no one has "assert[ed] a defense."[14]

Finally, there does not appear to be any excuse for a failure to respond to the complaint or public notice regarding the Property. After the United States initiated this action, it served Ortiz with the complaint and published notice that it was seeking to arrest the Property.[15] Because no responses have been filed and no parties have offered an explanation for their failure to respond, the Court finds culpability.[16] Therefore, the Court finds that default judgment is appropriate under the circumstances.

---

[11] *Deutsche Bank Nat. Tr. Co. v. Strunz*, No. 1:12-CV-01678, 2013 WL 122644, at *1 (M.D. Pa. Jan. 9, 2013).

[12] *Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14-CV-00449, 2014 WL 4059711, at *1 (M.D. Pa. Aug. 14, 2014).

[13] *United States v. $16,010.00 in U.S. Currency*, No. CIV.A. 11-945, 2011 WL 2746338, at *6 (D.N.J. July 13, 2011).

[14] *Pesotski v. Summa & Iezzi, Inc.*, No. 1:17-CV-00221, 2017 WL 3310951, at *3 (M.D. Pa. Aug. 3, 2017).

[15] Docs. 7, 8.

[16] *See Laborers Loc. Union 158 v. Shaffer*, No. 1:CV-10-1524, 2011 WL 1397107, at *1 (M.D. Pa. Apr. 13, 2011).

However, a finding that default judgment is warranted "is not the end of the inquiry."[17] The Court must further consider whether the "unchallenged facts constitute a legitimate cause of action."[18] The Court therefore analyzes whether the complaint states a claim for relief.

### B.    Whether the Allegations Sufficiently State a Claim

#### 1.    Facts

The facts alleged in the amended complaint, which the Court must accept as true for the purposes of determining whether the United States has stated a claim, are as follows.

In the early morning hours of November 20, 2024, Pennsylvania State Police ("PSP") Officer Jeremy Hoy initiated a traffic stop of a white Honda CRV after having observed that vehicle commit multiple traffic violations.[19] Hoy approached the passenger side of the vehicle and noticed two large suitcases in the rear cargo area.[20]

Hoy obtained a driver's license, registration and insurance from the driver, Ortiz.[21] After Hoy informed Ortiz of the traffic violations, Ortiz responded that he was lost and that "Waze had him all over the place."[22] During this conversation Hoy smelled

---

[17]  *Martin v. Nat'l Check Recovery Servs., LLC*, No. 1:12-CV-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016).
[18]  *Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F.Supp.2d 537, 541 (E.D. Pa. 2008).
[19]  Doc. 1 ¶ 11.
[20]  *Id.* ¶ 12.
[21]  *Id.*
[22]  *Id.*

marijuana odor emanating from the vehicle.[23] Hoy asked Ortiz to sit inside of Hoy's vehicle while Hoy checked Ortiz's information.[24]

While inside Hoy's vehicle, Ortiz stated "that he and his wife, the passenger in his vehicle, were traveling to Glendale, Arizona to spend Thanksgiving with family and then to California, where he also has family."[25] When asked to confirm his current address, Ortiz stated that his mother owned the address listed on Ortiz's drivers' license; after being asked how long he had been married, Ortiz paused before stating that he had been married for approximately one year.[26]

Ortiz informed Hoy that he worked "in a union building sets for tv shows and movies and that he was off for about a month."[27] Ortiz stated that he and his wife were traveling to Glendale, Arizona to spend Thanksgiving with his family before traveling to California, where Ortiz also had family.[28] He further informed Hoy that they were looking for homes to purchase in Glendale, as they may move there soon.[29] While Ortiz waited outside Hoy's vehicle, Hoy returned to Ortiz's vehicle to speak with Ortiz's wife.

Ortiz's wife, Nicole Martucci, informed Hoy that she and Ortiz were traveling to Phoenix, Arizona, to spend Thanksgiving with Ortiz's family.[30] During that interaction

---

[23]  *Id.*
[24]  *Id.*
[25]  *Id.* ¶ 13.
[26]  *Id.*
[27]  *Id.*
[28]  *Id.*
[29]  *Id.*
[30]  *Id.* ¶ 14.

Hoy could still smell marijuana emanating from Hoy's vehicle.[31] Upon returning to his vehicle, Hoy inquired about the marijuana smell, and Ortiz stated that Martucci had "just smoked."[32] When asked whether any marijuana remained, Ortiz stated that they still had an eighth of an ounce remaining.[33]

Ortiz consented to a search of his vehicle.[34] Hoy informed Martucci that Ortiz had consented to a search and asked if she possessed marijuana; Martucci acknowledged that she did and handed Hoy a bag of marijuana that she retrieved from the passenger side floor.[35] Martucci then nonverbally consented to a search of the vehicle, whereupon Hoy asked her to exit the vehicle.[36]

Hoy searched the suitcases; those "were full of clothes, but not enough for the reported length of the trip."[37] In the back seat was a box that contained approximately thirty fentanyl drug tests, as well as a backpack that held two bundles of money—one held one-dollar bills, while the other was mixed denominations with "10k" written on the outside.[38]

Hoy later opened the front driver's side door and "noticed a loose panel under the steering wheel, removed it, and observed a large vacuum sealed package of rubber

---

[31]   *Id.*
[32]   *Id.* ¶ 16.
[33]   *Id.*
[34]   *Id.* ¶ 17.
[35]   *Id.* ¶ 18.
[36]   *Id.*
[37]   *Id.* ¶ 19.
[38]   *Id.* ¶¶ 20-21.

banded U.S. Currency."[39] Ortiz stated that the currency was his, that he had packaged it, and that the package contained $100,000.[40] Hoy detained Ortiz and requested that Martucci follow them to the PSP barracks.[41] Upon reaching the barracks, Hoy explained to Ortiz and Martucci that they were being detained, but were not under arrest, and informed them of their *Miranda*[42] rights.[43]

Ortiz told law enforcement that he had obtained the cash found in his vehicle "by working union, breeding dogs, and as part owner of a body shop."[44] He stated that he earned approximately $120,000 per year.[45] Ortiz further stated that he was bringing the money with him to Arizona to purchase a house and, although he knew a realtor, he could not recall the realtor's name.[46]

Martucci stated that she knew nothing about the money found in the vehicle and did not see Ortiz place it in the vehicle.[47] Martucci informed Hoy that she lived with Ortiz, but was unable to provide a clear address where she lived.[48] Martucci reiterated that they were traveling to Phoenix to see Ortiz's family, and that they were planning

---

[39]   *Id.* ¶ 22.
[40]   *Id.* ¶ 23.
[41]   *Id.* ¶ 24.
[42]   *Miranda v. Arizona*, 384 U.S. 436 (1966).
[43]   *Id.* ¶¶ 25, 28.
[44]   *Id.* ¶ 26.
[45]   *Id.*
[46]   *Id.* ¶ 27.
[47]   *Id.* ¶ 28.
[48]   *Id.* ¶ 29.

to buy an investment property there.[49] She stated that she earns approximately 35 to 40 thousand dollars per year.[50]

Later that afternoon, a PSP officer arrived with a drug detection canine that had been "trained to detect odors of marijuana, cocaine, heroin, and methamphetamine."[51] "Prior to the scan, the defendant property was stored in multiple random locations throughout the garage. During two separate passes, the Canine displayed alert and indication behavior for narcotics on the seized currency but did not alter or indication to the control currency."[52] In November 2025, an ion scan was conducted of the Property, which "alarm[ed] for a high presence of narcotics, specifically cocaine."[53]

### 2. Analysis

Turning to the question of whether these facts state a claim, the government bears burden of demonstrating the existence of three elements:

> (1) the subject property must be moneys, negotiable instruments, securities, or other things of value; (2) there must be probable cause to believe that there exists illicit drug activity that renders the seized property subject to forfeiture; and (3) there must be probable cause to believe that a connection, or nexus, exists between the seized property and the predicate drug activity the government has identified.[54]

The second and third elements may be established where the Government provides "probable cause to believe that the property at issue either: (1) was 'furnished

---

[49]  *Id.*
[50]  *Id.*
[51]  *Id.* ¶ 30.
[52]  *Id.*
[53]  *Id.* ¶ 31.
[54]  *United States v. Ten Thousand Seven Hundred Dollars & No Cents in U.S. Currency*, 258 F.3d 215, 222 (3d Cir. 2001).

or intended to be furnished' in exchange for a controlled substance; (2) constitutes 'proceeds traceable' to a drug exchange; or (3) was 'used or intended to be used to facilitate' a violation of federal drug laws."[55] "The government may establish probable cause for the existence of the underlying drug activities and the currency's nexus to the illicit conduct by relying on circumstantial evidence."[56]

All three elements are sufficiently alleged by the complaint. First, the Property quite obviously is money.[57] Second and third, there is some evidence to establish probable cause that the Property was connected to illicit drug activity. Much of the currency was vacuum sealed and hidden behind a panel under the vehicle's steering wheel.[58] Importantly, a trained drug detection canine alerted to the presence of narcotics on the currency, but did not alert to control currency,[59] and an ion scan revealed a significant presence of cocaine on the Property.[60] Furthermore, Ortiz and Martucci provided inconsistent accounts of their travel.[61]

This sufficiently establishes probable cause that the Property was connected to drug trafficking, specifically, that it was proceeds traceable to drug trafficking.[62]

---

[55]   *Id.* at 223 (quoting 21 U.S.C. § 881(a)(6)).

[56]   *Id.*

[57]   Doc. 1 ¶ 2.

[58]   *Id.* ¶ 22.

[59]   *Id.* ¶¶ 30.

[60]   *Id.* ¶ 31.

[61]   *Id.* ¶¶ 13, 14, 27, 29.

[62]   *See, e.g., United States v. $88,000.00 in United States Currency*, No. CV 17-1439, 2018 WL 1217446, at *3 (W.D. Pa. Feb. 7, 2018) (currency "bundled in a manner indicative of how drug-money couriers transport illegal drug proceeds" along with a "positive canine alert to drug exposure" and fictitious account for source of currency sufficiently established probable

Accordingly, the Government has met all three elements of this claim, and default judgment is warranted.

### C.    Procedural Requirements for Forfeiture

Finally then, the Court considers whether the United States has complied with the procedural requirements for an in rem forfeiture action. To properly bring such an action, "the government must satisfy certain requirements."[63]

"First, the government must file a Verified Complaint that states the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue."[64] The complaint "must describe the property with reasonable particularity" and "identify the statute under which the forfeiture action is brought and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."[65]

"Second, if the property is already in a government agency's possession, custody, or control, the Clerk of the Court must issue a warrant to arrest the property before the government can seize it from its administrative agency for any judicial forfeiture proceedings."[66] "Finally, the government must publish notice about the action for any potential claimants of the property that it does not know and must directly notify any

---

cause), *report and recommendation adopted*, No. CV 17-1439, 2018 WL 1183219 (W.D. Pa. Mar. 7, 2018).

[63]    *$16,010.00 in U.S. Currency*, 2011 WL 2746338, at *4.

[64]    *Id.*

[65]    *Id.*

[66]    *Id.*

10

potential claimants that it does know."[67] "For potential claimants of the property that the government does not know, the government must publish notice within a reasonable time after the Verified Complaint is filed, and it can publish notice on an official internet government forfeiture site for at least thirty consecutive days."[68]

These requirements have been met. The complaint states the grounds for subject-matter jurisdiction, in rem jurisdiction over the Property, and venue.[69] It further describe the Property with reasonable particularity and identifies the statute under which the forfeiture action is brought.[70] Moreover, as described above, the complaint sufficiently details facts to support a reasonable belief that the United States will be able to meet its burden of proof at trial.

Second, the Government moved for the Clerk of Court to issue an arrest warrant for the Property, and such a warrant issued.[71] Finally, the Government served a copy of the complaint on Ortiz—the known potential claimant of the property—and published notice for thirty days on a Government website for any unknown potential claimants.[72]

The Government has therefore adequately complied with the procedural requirements for seeking in rem forfeiture. Consequently, the Court will enter default judgment in its favor and award forfeiture.

---

[67]   *Id.* at *5.
[68]   *Id.*
[69]   *See* Doc. 1.
[70]   *See id.*
[71]   Docs. 5, 6.
[72]   Docs. 7, 8.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that the United States is entitled to default judgment. The motion will therefore be granted and an order of forfeiture will be entered.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

12